UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
MIDVALE INDEMNITY COMPANY,

                Plaintiff,

  -against-                                     REPORT AND
                                                        RECOMMENDATION
AREVALOS CONSTRUCTION CORP.,              22 CV 97 (FB)(RML)
VICTOR SIGUENZA ZUNIGA,
625 HALSEY LLC, D & G
CONSTRUCTION NY INC. and RM
CONSTRUCTION AND DEVELOPMENT
CORP.,

                Defendants.
-------------------------------------------------------X

LEVY, United States Magistrate Judge:

        Plaintiff Midvale Indemnity Company ("Midvale") brought this action against defendants Arevalos Construction Corp. ("Arevalos"), Victor Siguenza Zuniga ("Zuniga"), 625 Halsey LLC ("Halsey"), D&G Construction NY Inc. ("D&G"), and RM Construction and Development Corp. ("RM") seeking a declaratory judgment relating to a commercial general liability insurance policy Midvale issued to Arevalos and an underlying lawsuit in New York state court. Midvale now moves for a default judgment against Arevalos and RM under Rule 55 of the Federal Rules of Civil Procedure and a declaration that it has no duty to defend or indemnify any party with respect to the underlying state court lawsuit. By order dated November 23, 2022, the Honorable Frederic Block, United States District Judge, referred Midvale's motion to me for report and recommendation. The motion was fully briefed as of April 11, 2023. For the reasons discussed below, I respectfully recommend that Midvale's motion for default judgment be granted and that the court enter a declaratory judgment that Midvale has no duty to defend or indemnify any party with respect to the state court case.

**PROCEDURAL BACKGROUND**

Midvale commenced this diversity action on January 6, 2022, seeking a declaration that it owes no obligation to defend or indemnify any party under the relevant insurance policy with respect to a personal injury action in the Supreme Court of New York, Kings County, captioned <u>Victor Siguenza Zuniga v. 625 Halsey LLC</u>, Index No. 525911/2018 (the "Underlying Action"), which involved a November 30, 2018 worksite incident (the "Incident"). (<u>See</u> Complaint, dated Jan. 6, 2022 ("Compl."), Dkt. No. 1, ¶¶ 21-25.) The insurance policy at issue is commercial general liability policy number GLP1022941 (the "Policy"), issued by Midvale to Arevalos, effective May 28, 2018 to May 28, 2019. (Affirmation of Robert J. Cosgrove, Esq., dated Nov. 23, 2022 ("Cosgrove Aff."), Dkt. No. 23-2, Ex. H.)

Midvale served the summons and complaint on RM on June 28, 2022 (Declaration of Service of Rick Lettau, dated June 28, 2022 ("Lettau Decl."), Dkt. No. 13), and on Arevalos on August 17, 2022 (Affidavit of Service of Thomas M. Arleo, sworn to Aug. 18, 2022 ("Arleo Aff."), Dkt. No. 17.) On October 20, 2022, Midvale requested that the Clerk of the Court enter defaults against RM and Arevalos after neither had filed an answer or otherwise appeared in this action. The Clerk of the Court noted the defaults of RM and Arevalos on October 25, 2022. (<u>See</u> Clerk's Certificate of Default, dated Oct. 25, 2022 ("Cert. of Default"), Dkt. No. 22.)

Zuniga filed an answer on July 28, 2022. (<u>See</u> Answer of Defendant Victor Siguenza Zuniga, dated July 28, 2022, Dkt. No. 16.) D&G filed an answer on January 19, 2023. (<u>See</u> Answer of Defendant D&G Construction NY, Inc., dated Jan. 19, 2023, Dkt. No. 24.) Midvale did not serve D&G, but D&G alleges that it is an indemnitee of Arevalos and has

2

asserted claims against it under a subcontract; D&G argues that granting a default judgment against Arevalos would impair D&G's ability to recover from Arevalos under the subcontract. (See Memorandum of Law in Opposition to Plaintiff's Motion for Default Judgment, dated Mar. 31, 2023 ("D&G Opp. Mem."), Dkt. No. 27.) Zuniga also claims to be an injured party entitled to an opportunity to litigate the merits of Midvale's claims against Arevalos. (See Defendant Victor Siguenza Zuniga's Memorandum of Law in Opposition to Midvale Indemnity Company's Motion for Default Judgment, dated Mar. 31, 2023 ("Zuniga Opp. Mem."), Dkt. No. 29-1.)

Zuniga commenced the Underlying Action on December 26, 2018 against Halsey, seeking to recover for injuries he sustained while working at a construction site at 625 Halsey Street in Brooklyn, New York (the "Premises"). (See Compl. ¶ 25, Ex. C.) On October 9, 2019, Halsey filed a third-party complaint to bring D&G into the Underlying Action as a third-party defendant. (Cosgrove Aff., Ex. D.) Halsey's third-party complaint in the Underlying Action asserts causes of action against D&G for contribution, common-law indemnity, contractual indemnity, and breach of contract. (See id.) Zuniga then filed an Amended Complaint on December 17, 2019, asserting that the Incident and resulting injuries were caused by the negligence, carelessness, and recklessness of Halsey and D&G. (See Cosgrove Aff., Ex. E ¶¶ 37-42.)

On May 27, 2020, D&G filed a third-party complaint to bring RM into the Underlying Action as a third-party defendant. (See Cosgrove Aff., Ex. F.) D&G's third-party complaint asserts causes of action against RM for common law indemnification, contribution, contractual indemnification, and breach of contract. (Id.) On October 6, 2021, D&G filed another third-party complaint to bring Arevalos into the Underlying Action as a third-party defendant. (See Cosgrove Aff., Ex. G.) D&G's third-party complaint asserts causes of action

3

against Arevalos for common law indemnification, contribution, contractual indemnification, and breach of contract. (Id.)

## DISCUSSION

### A. Declaratory Judgment Standard

Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. § 2201 allow a court to issue a declaratory judgment in cases where the party seeking the declaratory judgment demonstrates the existence of an actual case or controversy. FED. R. CIV. P. 57; 28 U.S.C. § 2201; see U.S. Underwriters Ins. Co. v. Orion Plumbing & Heating Corp., 321 F. Supp. 3d 313, 316 (E.D.N.Y. 2018) ("[B]efore a court may issue any declaratory order, it must satisfy itself that the matter presents an actual case or controversy.") Once a party has demonstrated an actual case or controversy, it is within the sound discretion of the court to decide whether to grant the declaratory relief sought. N.Y. Guardian Mortgagee Corp. v. Cleland, 473 F. Supp. 409, 418 (S.D.N.Y. 1979) (collecting cases). Declaratory relief is proper "(1) where the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, or (2) when it will terminate and afford relief from the uncertainty, insecurity and controversy giving rise to the proceedings." Dukes Bridge, LLC v. Sec. Life of Denver Ins. Co., No. 10 CV 5491, 2020 WL 1908557, at *76 (E.D.N.Y. Apr. 17, 2020); see also Universal Acupuncture Pain Servs., P.C. v. State Farm Mut. Auto. Ins. Co., 196 F. Supp. 2d 378, 384 (S.D.N.Y. 2002) (quoting Md. Casualty Co. v. Rosen, 445 F.2d 1012, 1014 (2d Cir. 1971)).

### B. Default Judgment Standard

Where, as here, declaratory relief is requested following a default, plaintiffs must (1) adhere to the two-step process prescribed in Fed. R. Civ. P. 55 to obtain a default judgment, and (2) establish entitlement to the requested relief based on the facts established by the default.

See PHL Variable Ins. Co. v. Bimbo, No. 17 CV 1290, 2018 WL 4691222, at *2 (E.D.N.Y. Aug. 30, 2018) (citation omitted). A default constitutes the defendants' admission to all the well-pleaded allegations in the complaint pertaining to liability. A&B Alt. Mktg. Inc. v. Int'l Quality Fruit Inc., 35 F.4th 913, 916 (2d Cir. 2022); Greyhound Exhibitgroup, Inc., v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992). As such, plaintiff must demonstrate that the unchallenged facts and all reasonable inferences drawn from such facts establish defendants' liability. See City of New York v. Mickalis Pawn Shop, 645 F.3d 114, 137 (2d Cir. 2011). Once the court ensures that the plaintiff took all mandatory steps in moving for a default judgment and has established a right to a declaration against the defendants, a default declaratory judgment may be entered. See Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009) (citation omitted).

Here, there is no question that Midvale issued the Policy to Arevalos, and that Arevalos has defaulted by failing to appear or answer in this case. Both Arevalos and RM were served with the summons and complaint in this action (see Lettau Decl.; Arleo Aff.), both Arevalos and RM have failed to answer or otherwise respond, and the Clerk of the Court has entered defaults against Arevalos and RM. (Cert. of Default.) Therefore, Midvale is entitled to default judgments against Arevalos and RM under Rule 55.

Additionally, plaintiff has established that this is an actual controversy where a declaratory judgment would afford specific relief and clarify its legal obligations to the insured. As discussed above, plaintiff seeks to clarify its legal obligations and liability as to the Policy and defendants. See, e.g., W. Heritage Ins. Co. v. Jacobs Dev. Corp., No. 12 CV 5718, 2014 WL 297792, at *9 (E.D.N.Y. Jan. 27, 2014) (citing Maryland Cas. Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273 (1941) (insurance company's request for declaratory judgment that it was not

liable to defend or indemnify an insured constituted actual controversy)). Plaintiff thus has established its entitlement to a declaratory judgment.

It is undisputed that D&G and Halsey are not named insureds under the Policy. (See Cosgrove Aff., Ex. H.) D&G argues that it "holds an interest in the outcome" of Midvale's default motion "as a contractual indemnitee of Arevalos" and that it would be prejudiced by the entry of a default judgment against Arevalos. (D&G Opp. Mem. at 1 n.1.) D&G's asserted interest is based on a November 14, 2018 Subcontractor Agreement for construction work at the Premises (the "Subcontractor Agreement"), which states that Arevalos, as the subcontractor, "shall indemnify and hold harmless D&G for bodily injury, property damage, and economic damage arising out of or resulting from work covered by the Subcontractor Agreement." (See Standard Form of Agreement Between General Contractor and Subcontractor, dated Nov. 14, 2018, Dkt. No. 1-4, at 41-43.) This Subcontractor Agreement may have created a duty that Arevelos owes to D&G, but it does not impose any duty on Midvale, which is a stranger to that contract.[1]

Construction of an insurance policy "is governed by the rules of construction applicable to contracts generally" (Christiania Gen. Ins. Corp. of New York v. Great Am. Ins. Co., 979 F.2d 268, 274 (2d Cir. 1992)), and "an insurance contract is interpreted to give effect to the intent of the parties as expressed in the clear language of the contract." Parks Real Estate Purchasing Grp. v. St. Paul Fire & Marine Ins. Co., 472 F.3d 33, 42 (2d Cir. 2006) (citation and internal quotation marks omitted); see also Goldberger v. Paul Revere Life Ins. Co., 165 F.3d 180, 182 (2d Cir. 1999). "A non-party to a contract governed by New York law lacks standing

---

[1] D&G and Zuniga both raise arguments regarding the timeliness and sufficiency of Midvale's actions in disclaiming coverage. However, these arguments do not alter the fundamental fact that, as explained *infra*, no coverage is owed to D&G or Zuniga, or any other party, under the Policy. It is therefore unnecessary to address those arguments.

to enforce the agreement in the absence of terms that clearly evidence an intent to permit enforcement by the third party in question." Premium Mortg. Corp. v. Equifax, Inc., 583 F.3d 103, 108 (2d Cir. 2009) (citation omitted); see also Hillside Metro Assocs., LLC v. JPMorgan Chase Bank, Nat'l Ass'n, 747 F.3d 44, 49 (2d Cir. 2014) ("Absent a contractual relationship there can be no contractual remedy. Such a relationship exists if the plaintiff is in privity of contract with the defendant or is a third-party beneficiary of the contract. Proving third-party beneficiary status requires that the contract terms clearly evidence an intent to permit enforcement by the third party in question") (internal citations, quotations, and alterations omitted); Taggart v. State Farm Mut. Auto. Ins. Co., 707 N.Y.S.2d 452, 453 (1st Dep't 2000) ("Plaintiff is not defendant's insured and, thus, has no standing to sue defendant for breach of that policy").

"A party asserting rights as a third-party beneficiary must establish (1) the existence of a valid and binding contract between other parties, (2) that the contract was intended for his [or her] benefit and (3) that the benefit to him [or her] is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate him [or her] if the benefit is lost." Underdog Trucking, LLC, Reggie Anders v. Verizon Servs. Corp., No. 09 CV 8918, 2010 WL 2900048, at *5 (S.D.N.Y. July 20, 2010) (citing Madeira v. Affordable Hous. Found., Inc., 469 F.3d 219, 251 (2d Cir. 2006) (citation omitted)); see also Brown v. AXA RE, No. 02 CV 10138, 2004 WL 941959, at *3-4 (S.D.N.Y. May 3, 2004) (plaintiffs failed to state a claim under New York law for breach of contact damaging a third-party beneficiary where none of the plaintiffs' names appeared on the face of the contract and "there [was] no other evidence on the face of the contract to indicate that the parties intended to benefit Plaintiffs").

D&G does not claim to be a third-party beneficiary of the Policy, and the Policy does not indicate an intent to confer a benefit upon D&G or any other individual or entity other than Arevalos. Thus, D&G lacks standing to enforce the terms of the Policy. See State v. Am. Mfrs. Mut. Ins. Co., 593 N.Y.S.2d 885, 886 (3d Dep't 1993) (granting summary judgment to defendant insurance company and declaration that it had no duty to defend or indemnify the plaintiff because "plaintiff [did] not appear as a named insured anywhere in the insurance policy" and "there [was] nothing in the insurance policy to demonstrate the intent of [the contracting parties] to benefit plaintiff.").

The same holds true with respect to Zuniga, who argues that, as the injured party, he is entitled to "an opportunity to fully litigate the merits of Midvale's claims." (Zuniga Opp. Mem. at 5.) Zuniga is not a named insured or third-party beneficiary under the Policy, and pursuant to the doctrine of prudential standing, a litigant is generally prohibited from "asserting the rights or legal interests of others in order to obtain relief from injury to themselves." Keepers, Inc. v. City of Milford, 807 F.3d 24, 40 (2d Cir. 2015); see also Warth v. Seldin, 422 U.S. 490, 499 (1975) (explaining that to satisfy prudential standing, a "plaintiff generally must assert [its] own legal rights and interests, and cannot rest [its] claim to relief on the rights or interests of third parties."). Here, Zuniga is attempting to enforce the contractual rights of a third party, namely Arevelos. He lacks standing to do so.

In this context, it is not necessary to consider the merits of Midvale's contention that the Policy's Multi-Unit and Tract Housing Residential Exclusion bars coverage for the Underlying Action. (See Midvale's Memorandum of Law in Support of its Motion for Default Judgment, dated Nov. 23, 2022, Dkt. No. 23-1, at 8-10.) Nonetheless, in the interest of completeness, I will briefly address it.

8

By its terms, the Policy excludes coverage for "[b]odily injury" arising out of any "construction operations" that involve a "housing tract" or "multi-unit residential building." (See Cosgrove Aff., Ex. H.)  The Policy's Multi-Unit and Tract Housing Residential Exclusion defines "construction operations" as "pre-construction, construction, post-construction, reconstruction, renovation, remodeling, conversion of the building to a condominium, townhouse, cooperative building or any other type of multiple unit residential structure, maintenance or repair."  (Id. at 51.)  It further defines "housing tract" as "a residential development or subdivision consisting of more than eight (8) of any combination of dwelling units, detached single family dwellings, or lots all built, owned, or developed by the same or related general contractors, developers, persons, limited liability companies, partnerships, joint ventures, corporations, unincorporated associations or trusts."  (Id.)  A "multi-unit residential building" is defined as "condominiums, townhouses, apartments, dormitories or similar structures that have more than four (4) units built or used for the purpose of residential occupancy, at the same location or complex, regardless of the number of buildings."  (Id.)

On September 30, 2016, a NYC Department of Buildings Application (the "NYC DOB Application") was filed in connection with the Premises.  (See Cosgrove Aff., Ex. I.)  In the NYC DOB Application, the Occupancy Classification for the Premises is "R-2 – RESIDENTIAL: APARTMENT HOUSES," and the Multiple Dwelling Classification for the Premises is "HAEA," which signifies that the Premises is a newly-constructed building with three or more dwelling units.[2]  (Reply Affirmation of Robert J. Cosgrove, Esq., dated Apr. 11, 2023, Dkt. No. 30-1, Ex. B.)  Moreover, the Premises is described as a four-story building with ten dwelling units.  (See id. at 4.)  Thus, the Underlying Action seeks damages for "[b]odily

---

[2] See https://perma.cc/7JKK-QZWF.

injury" arising out of "construction operations" that involve a "housing tract" or "multi-unit residential building" as defined in the Policy, and the Policy's Multi-Unit and Tract Housing Residential Exclusion plainly bars coverage for the Underlying Action. Neither D&G nor Zuniga argues otherwise; therefore, even if Arevalos had appeared and responded to the complaint, Midvale would still be entitled to a declaratory judgment.

## CONCLUSION

For the foregoing reasons, I respectfully recommend that Midvale's motion for a default judgment against Arevalos and RM be granted, and that the court enter a declaratory judgment that Midvale has no duty to defend or indemnify any party with respect to the Underlying Action. Any objection to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days. Failure to file objections in a timely manner may waive a right to appeal the District Court's order. See 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(d), 72.

Respectfully submitted,

/s/
ROBERT M. LEVY
United States Magistrate Judge

Dated: Brooklyn, New York
       June 13, 2023

10