UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

MIDVALE INDEMNITY COMPANY,

                *Plaintiff*,

– against –

AREVALOS CONSTRUCTION CORP.; VICTOR SIGUENZA ZUNIGA; 625 HALSEY LLC; D&G CONSTRUCTION NY INC.; RM CONSTRUCTION AND DEVELOPMENT CORP.

                *Defendants.*

**MEMORANDUM & ORDER**
22-cv-00097 (NCM) (RML)

---

**NATASHA C. MERLE**, United States District Judge:

    Before the Court is plaintiff Midvale Indemnity Company's ("Midvale") motion for summary judgment, ECF No. 53 (the "Midvale Motion"), and defendants D&G Construction NY Inc. ("D&G") and Victor Siguenza Zuniga's ("Zuniga") cross-motions for summary judgment, ECF Nos. 54 (the "D&G Motion") and 55 (the "Zuniga Motion"), respectively (together, the "Cross Motions").[1] Plaintiff Midvale brings this action seeking a declaration that it need not defend or indemnify defendants in a personal injury action currently proceeding in New York state court. Defendants contend that Midvale must do so. For the reasons stated herein, the Midvale Motion is **DENIED**, and the Cross Motions are **GRANTED** in part, **DENIED** in part.

---

[1]    The Court hereinafter refers to plaintiff's response to defendant D&G's cross-motion for summary judgment, ECF No. 56, as "Midvale D&G Opposition"; plaintiff's response to defendant Zuniga's cross-motion for summary judgment, ECF No. 57, as "Midvale Zuniga Opposition"; defendant D&G's reply in support of its cross-motion for summary judgment, ECF No. 58, as the "D&G Reply"; and defendant Zuniga's reply in support of his cross-motion for summary judgment, ECF No. 59, as the "Zuniga Reply."

1

## BACKGROUND

From 2018 to 2019, Midvale issued a general commercial liability insurance policy to defendant Arevalos Construction Corp. ("Arevalos"). Joint Statement of Material Facts ("JSMF") ¶¶ 1, 2, ECF No. 40; *see also* Ex. A, ECF No. 40-2 (the "Arevalos Policy"). As relevant to this dispute, the Arevalos Policy includes a provision excluding coverage for bodily injury at any construction site for a "housing tract" or "multi-unit residential building" (the "Multi-Unit Exclusion"). JSMF ¶ 4. Plaintiff Midvale seeks a declaration in this action based on the Arevalos Policy that it need not defend or indemnify defendants in an ongoing negligence action in New York state court.

After sustaining injuries while at work on a construction project, Zuniga filed a negligence action in state court against D&G and the property owner[2] in December 2018 (the "Zuniga Action"). JSMF ¶ 24.[3] Zuniga's injury occurred at a site located at 625 Halsey Street, in Brooklyn, New York. JSMF ¶ 7. The owner of the property hired D&G as the general contractor for the project. JSMF ¶¶ 8–9, 13. D&G then hired Arevalos as a subcontractor for the project and entered into a subcontractor agreement requiring Arevalos to (1) indemnify D&G for all liability arising out of bodily injury during work on the project, and (2) obtain insurance to that effect. JSMF ¶¶ 10, 11, 12. After the initial filing of the Zuniga Action, D&G filed a third-party complaint against Arevalos, alleging that any injury Zuniga sustained was due to the negligence of Arevalos rather than D&G. JSMF ¶ 28. D&G seeks indemnification from Arevalos in the Zuniga Action. JSMF ¶ 29.

---

[2] The property owner is defendant 625 Halsey LLC, which plaintiff voluntarily dismissed from this action pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i). *See* Notice of Voluntary Dismissal, ECF No. 45.

[3] Zuniga alleges in the Zuniga Action that defendant RM Construction and Development Corp. ("RM") was his employer at the time of his injuries. JSMF ¶ 26.

In early October 2021, D&G informed Midvale and Arevalos that it expected them to indemnify D&G in the state action. JSMF ¶ 31, *see also generally* Ex. J, ECF No. 40-11 (the "D&G Notice"). A series of letters from Midvale to Arevalos and D&G followed. *See* Midvale Mot. 17;[4] *see also* JSMF ¶¶ 31–34.

On November 23, 2021, Midvale sent a letter to Arevalos. JSMF ¶ 32; *see also generally* JSMF Ex. K, ECF No. 40-12 (the "November Arevalos Letter"). This letter included several "reserv[ations of] rights to disclaim coverage," including as to employer liability, D&G's potential negligence, and the Multi-Unit Exclusion. Nov. Arevalos Ltr. 6–11. The November Arevalos Letter also included an explicit disclaimer of coverage as to "any and all breach of contract claims" by D&G. JSMF ¶ 32; Nov. Arevalos Ltr. 8.

That same day, Midvale sent a letter to D&G. JSMF ¶ 33; *see also generally* Ex. L, ECF No. 40-13 (the "November D&G Letter"). This letter included several disclaimers of coverage, including for "any and all claims arising out of and/or connected to the" Zuniga Action. Nov. D&G Ltr. 7. The letter disclaimed coverage as to D&G in part because it was Midvale's position that D&G was not an additional insured under the Arevalos Policy. JSMF ¶ 33, Nov. D&G Ltr. 4. The letter also stated that "Midvale is not obligated to provide defense or indemnification to D&G unless and until D&G is absolved of negligence" and reserved Midvale's rights as to the Multi-Unit Exclusion. JSMF ¶ 33, Nov. D&G Ltr. 6–7.

On January 5, 2022, Midvale sent a second letter to Arevalos. JSMF ¶ 43; *see also generally* Ex. M, ECF No. 40-14 (the "January Arevalos Letter"). This letter included disclaimers of coverage as to breach of contract claims by D&G and the property owner,

---

[4] Throughout this Order, page numbers for docket filings refer to the page numbers assigned in ECF filing headers.

3

and as to the Multi-Unit Exclusion "[b]ased upon newly discovered information" from which "it appears clear that Zuniga's accident occurred during the construction of a multi-unit residential building." Jan. Arevalos Ltr. 9, 10. The letter also reserved Midvale's rights to disclaim coverage in the future as to an employer liability exclusion in the Arevalos Policy. Jan. Arevalos Ltr. 8.

The day after the January Arevalos Letter, Midvale filed this action seeking a declaration that it has no duty to defend or indemnify any party with respect to the action captioned *Victor Siguenza Zuniga v. 625 Halsey LLC, et al.*, in the Supreme Court of the State of New York, County of Kings (Index No. 525911/2018). Compl., ECF No. 1.

## DISCUSSION

A party moving for summary judgment must show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On review of a Rule 56 motion, the Court "resolve[s] all ambiguities and draw[s] all permissible factual inferences in favor of the party against whom summary judgment is sought." *Brandon v. Royce*, 102 F.4th 47, 54 (2d Cir. 2024) (citing *Union Mut. Fire Ins. Co. v. Ace Caribbean Mkt.*, 64 F.4th 441, 445 (2d Cir. 2023)).[5]

The initial burden rests with the movant to demonstrate an absence of material and genuine factual disputes. *Singletary v. Russo*, 377 F. Supp. 3d 175, 183–84 (E.D.N.Y. 2019). If that burden is satisfied, the non-moving party must then point to evidence demonstrating that a material fact is indeed in dispute. *Laurent v. Edwin*, 528 F. Supp. 3d 69, 83 (E.D.N.Y. 2021) (citing *Spinelli v. City of New York*, 579 F.3d 160, 166–67 (2d Cir. 2009); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)). Facts are in genuine

---

[5] Throughout this Opinion, the Court omits all internal quotation marks, footnotes, and citations, and adopts all alterations, unless otherwise indicated.

4

dispute when "the jury could reasonably find for" the non-moving party based on the evidence in the record. *Borley v. United States*, 22 F.4th 75, 78 (2d Cir. 2021). The Court need only consider admissible evidence, and it need not leave every evidentiary stone unturned. *Looney v. Macy's Inc.*, 588 F. Supp. 3d 328, 340 (E.D.N.Y. 2021).

Through the Declaratory Judgment Act (the "DJA"), Congress provided federal courts with jurisdiction to "declare the rights and other legal relations of any interested party . . . whether or not further relief is or could be sought." 28 U.S.C.A. § 2201. "In other words, the DJA creates a means by which rights and obligations may be adjudicated in cases involving an actual controversy that has not reached the stage at which either party may seek a coercive remedy." *Admiral Ins. Co. v. Niagara Transformer Corp.*, 57 F.4th 85, 92 (2d Cir. 2023). Legal disputes over insurance coverage have "become the paradigm" for courts asserting DJA jurisdiction. *Id.* at 92–93.

I. Midvale's Duty to Defend

Midvale asks this Court for a declaration that it need not defend or indemnify defendants pursuant to the Arevalos Policy. An insurer generally has an "exceedingly broad" duty to defend its insured against legal action. *Jewish Cmty. Ctr. of Staten Island v. Trumbull Ins. Co.*, 957 F. Supp. 2d 215, 225 (E.D.N.Y. 2013) (citing *Auto. Ins. Co. of Hartford v. Cook*, 7 N.Y.3d 131, 137 (2006)). Accordingly, an insurer "must defend whenever the allegations within the four corners of the underlying complaint may give rise to coverage[.]" *Id.* Only where "there is no possible factual or legal basis on which the insurer might eventually be obligated to indemnify its insured under any policy provision," is the insurer relieved of its duty to defend. *Jewish Cmty. Ctr.*, 957 F. Supp. 2d at 225.

5

New York's Insurance Law requires carriers to timely disclaim coverage. Specifically, insurance companies must "give written notice as soon as is reasonably possible" of any "disclaimer of liability or denial of coverage to the insured and the injured person or any other claimant." N.Y. Ins. Law § 3420(d)(2) ("Section 3420"). Where a disclaimer of coverage is based on a policy *exclusion*—rather than the terms of a policy's *coverage*—and does not comply with Section 3420's timeliness requirement to provide notice as soon as is reasonably possible, the insurance carrier may not "rely on the policy exclusion to escape liability." *Worcester Ins. Co. v. Bettenhauser*, 95 N.Y.2d 185, 188–90 (2000).

Here, Midvale contends that it has no duty to defend any party in the Zuniga Action based on the Multi-Unit Exclusion. That may be true based on the substantive terms of that provision. However, the Multi-Unit Exclusion is expressly exclusionary, and therefore Section 3420's timeliness requirements apply. Taking Midvale's Motion first, and viewing all factual ambiguities and permissible inferences in the light most favorable to D&G and Zuniga, the Court finds that Midvale did not comply with Section 3420(d)(2) by timely disclaiming coverage pertaining to the Zuniga Action. This is so even viewing the record most favorably to Midvale in analyzing the Cross Motions. Accordingly, the Court finds that Midvale's disclaimers of coverage to D&G and Zuniga were invalid as a matter of law. Midvale therefore carries a duty to defend in the Zuniga Action.

    A.    *Disclaimer Timing*

The parties disagree as to when Midvale disclaimed coverage pursuant to the Multi-Unit Exclusion. The parties' disagreement centers on the various letters exchanged in late 2021 and early 2022. They do not dispute the factual content of those letters. Whether viewed in the light most favorable to D&G and Zuniga or Midvale, the record

6

establishes that Midvale disclaimed coverage as to the Multi-Unit Exclusion by January 5 or 6, 2022.

With respect to Arevalos, Midvale contends that it disclaimed coverage in the January Arevalos Letter. Midvale Mot. 17. D&G and Zuniga contend that service of the complaint in this action on Arevalos in August 2022 is the earliest date on which Midvale can be said to have disclaimed coverage—although Zuniga contends that the complaint, too, was merely a reservation of rights. Zuniga Mot. 17, 21. A valid disclaimer must include "a high degree of specificity of the ground or grounds" on which the insurer disclaims coverage. *Travelers Indem. Co. v. Northrop Grumman Corp.*, 413 F. Supp. 3d 263, 281 (S.D.N.Y. 2019). Based on the undisputed facts, whether viewed in the light most favorable to D&G and Zuniga or Midvale, the Court concludes that Midvale disclaimed coverage to Arevalos on January 5, 2022. Midvale expressly disclaimed coverage based upon the Multi-Unit Exclusion when it wrote: "Based upon newly discovered information, it appears clear that Zuniga's accident occurred during the construction of a multi-unit residential building. Midvale therefore disclaims coverage to Arevalos based upon this exclusion." Jan. Arevalos Ltr. 10.

As to D&G, the parties agree that Midvale never actually disclaimed coverage pursuant to the Multi-Unit Exclusion. *See* Midvale D&G Opp'n at 6–8; D&G Mot. 12 (arguing that Midvale only reserved its rights—rather than disclaimed coverage—as to the Multi-Unit Exclusion in the November D&G Letter). However, Midvale contends that it was not required to do so after disclaiming coverage in the November D&G Letter based on its contention that D&G was not an additional insured pursuant to the coverage provisions of the Arevalos Policy. *See* Midvale D&G Opp'n at 8. Furthermore, Midvale argues that any timeliness arguments under Section 3420 do not apply to any disclaimer

7

based on D&G's status as an additional insured, which concerns a *coverage*, not *exclusion*, provision in the Arevalos Policy. Midvale D&G Opp'n at 4–5, 8.

      Midvale is correct that Section 3420 does not impose timeliness requirements on disclaimers pursuant to coverage provisions in an insurance policy. *See Bettenhauser*, 95 N.Y.2d at 188–89 ("Disclaimer pursuant to section 3420(d) is unnecessary when a claim falls outside the scope of the policy's coverage portion. Under those circumstances, the insurance policy does not contemplate coverage in the first instance, and requiring payment of a claim upon failure to timely disclaim would create coverage where it never existed."). However, Midvale stipulated to D&G's status as an additional insured "[a]t all relevant times and for purposes of this litigation only[.]" JSMF ¶ 3 (the "Stipulation"). The Second Circuit has held that "intentional, clear, and unambiguous" statements of fact constitute binding judicial admissions, which have "the effect of withdrawing a fact from contention" during the proceedings. *In re Motors Liquidation Co.*, 957 F.3d 357, 360–61 (2d Cir. 2020). This rule only applies to statements of fact; "legal conclusion[s] do[] not suffice." *Id.* at 360. Legal positions, however, may be waived. *Burt Rigid Box, Inc. v. Travelers Prop. Cas. Corp.*, 302 F.3d 83, 95 (2d Cir. 2002) (describing waiver as the "voluntary and intentional relinquishment of a known right").

      Whether it considers the Stipulation one of fact or law, the Court may not disregard its substance. Midvale attempts to discount the Stipulation as a "legal fiction" arising out of its desire to "streamline litigation and avoid the time and expense of discovery." Midvale D&G Opp'n at 7 n.1, 8. In doing so, however, Midvale concedes that entering into the Stipulation was an intentional strategic decision. Midvale's knowing and voluntary agreement that D&G shall be considered an additional insured for purposes of this action therefore constitutes a judicial admission, if viewed as a fact, or waiver, if viewed as a legal

8

position. Furthermore, as D&G points out, allowing Midvale to renege on such an agreement would cause substantial prejudice to D&G while offending notions of judicial economy and fairness: the parties agreed to forego discovery into D&G's status as an additional insured because of the Stipulation. *See* Midvale D&G Opp'n at 7–8; D&G Reply at 4; *Burt Rigid Box, Inc.*, 302 F.3d at 95 (noting that estoppel may apply where prejudice is shown). Accordingly, the Court finds that Midvale is bound by the Stipulation and D&G's status as an additional insured under the Arevalos Policy is not in genuine dispute.

Whether viewing the evidence in the light most favorable to D&G or Midvale, D&G received notice of Midvale's Multi-Unit Exclusion disclaimer when D&G was carbon copied on the January Arevalos Letter, which expressly disclaimed coverage under that policy exclusion. Midvale D&G Opp'n at 8; *see* Jan. Arevalos Ltr. 10, 12. Although the January Arevalos Letter specifically disclaimed coverage as to Arevalos and not D&G, the Court cannot ignore the practical effect of the parties' Stipulation. That is to say, at the time of the January Arevalos Letter, Midvale believed it had already disclaimed coverage as to D&G under the additional insured provision and therefore believed it need not do so pursuant to the Multi-Unit Exclusion. *See* Midvale D&G Opp'n at 8. Furthermore, Midvale filed the instant action on January 6, 2022—one day after the January Arevalos Letter—which provided D&G additional notice of the Multi-Unit Exclusion disclaimer. *United Fin. Cas. Co. v. Country-Wide Ins. Co.*, 779 F. App'x 761, 765 (2d Cir. 2019) ("Under New York law, the commencement of a declaratory judgment action by an

9

insurer is "sufficient written notice of disclaimer because the action constitutes unequivocal, unambiguous written notice.").[6]

Accordingly, the Court finds that Midvale disclaimed coverage as to both Arevalos and D&G on January 5 or 6, 2022 (the "Disclaimer").

### B.    Disclaimer Timeliness

The Court now turns to the question of whether the Disclaimer was timely, as a matter of law, pursuant to Section 3420. It was not. "A failure by the insurer to give such notice as soon as is reasonably possible after it first learns of the accident or of grounds for disclaimer of liability or denial of coverage, precludes effective disclaimer or denial." *U.S. Underwriters Ins. Co. v. City Club Hotel, LLC*, 369 F.3d 102, 107 (2d Cir. 2002) (citing *Hartford Ins. Co. v. County of Nassau*, 46 N.Y.2d 1028, 1029 (1979)). Where a delay occurs between notice of the claim and any disclaimer of coverage, the insurer "bears the burden of justifying" that delay. *U.S. Underwriters Ins. Co.*, 369 F.3d at 107; *First Fin. Ins. Co. v. Jetco Contracting Corp.*, 1 N.Y.3d 64, 70 (2003) ("One thing is clear: that it is the responsibility of the insurer to explain its delay."). Insurers are afforded a "reasonable time" to investigate a claim if the "grounds for disclaimer" of that claim "are not readily apparent." *U.S. Underwriters Ins. Co.*, 369 F.3d at 107. In order to "measure the reasonableness of the delay," the Court begins with the "point in time when the insurer first learns of the grounds for disclaimer of liability." *Id*. That is, once the insurer "has

---

[6]     D&G contends that notice of the Multi-Unit Exclusion should be measured by the date of service of the complaint in this action, rather than the filing of the complaint. D&G Mot. 19; *see also Norfolk & Dedham Mut. Fire Ins. Co. v. Petrizzi*, 503 N.Y.S.2d 51, 53 (1st Dep't 1986) (noting that a "properly served" pleading constitutes notice of disclaimer). However, while the docket indicates that D&G answered the complaint in January 2023, ECF No. 24, the current record does not indicate when D&G received actual notice of this case. The Court need not reach this question, however, in light of the notice provided by the January Arevalos Letter, as discussed *supra*.

sufficient information to disclaim coverage in good faith," the reasonableness clock begins to run. *United Specialty Ins. Co. v. Premier Contracting of New York, Inc.*, 375 F. Supp. 3d 389, 398 (S.D.N.Y. 2019).

Whether an insurer has sent a disclaimer "as soon as is reasonably possible" is typically a factual question best left for the jury. In those circumstances, the fact finder would analyze the "facts and circumstances, especially the length of and the reason for the delay" in determining whether an insurer's disclaimer was reasonably timely. *U.S. Underwriters Ins. Co.*, 369 F.3d at 107. However, the reasonableness of a delay in disclaiming coverage may be decided as a matter of law in "exceptional" cases. *Id.* The New York Court of Appeals "has stated unmistakably that a delay may be unreasonable as a matter of law if it is unexplained or unexcused." *Jewish Cmty. Ctr. of Staten Island*, 957 F. Supp. 2d at 237 (citing *First Fin. Ins. Co.*, 1 N.Y.3d at 70); *see also U.S. Underwriters Ins. Co.*, 369 F.3d at 107 ("New York courts have concluded that an unexcused delay of 48 days or longer is unreasonable as a matter of law."); *Certain Underwriters at Lloyd's, London v. Midvale Ins. Co.*, No. 21-cv-03364, 2023 WL 4532434, at *2 (E.D.N.Y. July 13, 2023) ("While some time for investigation is always allowed, unexplained or unexcused delays of more than 30 days are generally unreasonable as a matter of law.").

A delay is unexcused, for example, when "the basis for denying coverage was or should have been readily apparent before the onset of the delay." *Jewish Cmty. Ctr. of Staten Island*, 957 F. Supp. 2d at 237. *See also Bovis Lend Lease LMB, Inc. v. Royal Surplus Lines Ins. Co.*, 806 N.Y.S.2d 53, 57 (1st Dep't 2005) (collecting cases and affirming finding that "almost 60 days" delay was unreasonable as a matter of law). To the contrary, a delay may be justified and therefore reasonable as a matter of law where

11

"an external factor beyond the insurer's control unexpectedly interferes with the insurer's ability to investigate the claim in a timely fashion." *New York Univ. v. First Fin. Ins. Co.*, 322 F.3d 750, 755 (2d Cir. 2003). Examples of such external factors are "a computer system failure or the need to wait for a more convenient time to interview a woman who has just delivered a baby." *Bovis Lend Lease LMB, Inc.*, 806 N.Y.S.2d at 57.

  Midvale contends that its Disclaimer was timely because it "learned, for certain" that the Multi-Unit Exclusion barred coverage after a reasonable investigation culminated in a report from its investigators on December 9, 2021 (the "Report").[7] Midvale Mot. 17; *see also* Midvale D&G Opp'n at 11 (noting that it "issued a disclaimer to Arevalos within thirty days" of receiving the report). In response, D&G and Zuniga argue that the clock began to run on October 4, 2021, when Midvale learned of the Zuniga Action. D&G Mot. 6, 16; *see also* Midvale Mot. 16 ("Midvale received notice of the Underlying Action on October 4, 2021"). Specifically, they contend that D&G informed Midvale on that date of the particulars of the incident underlying the Zuniga Action, including "the date of the incident, the specific building location, and that Mr. Zuniga was working at a construction site at the building when he was allegedly struck by falling construction material that was improperly hoisted." Zuniga Reply at 9. D&G and Zuniga further challenge Midvale's position that its delay based on the Report was reasonable by pointing to (1) November 2021 municipal records for the construction site underlying the Zuniga Action; (2) "images from a simple Google Maps search" that indicates a multi-unit

---

[7]  Although D&G points out that the Report was never disclosed during discovery nor its existence stipulated to by the parties in their material statement of facts, *see* Maxwell Decl. ¶¶ 7–8, ECF No. 54, the parties do not dispute that Midvale received the Report at that time. The Court therefore does not perceive a factual dispute regarding the timing of the Report.

12

residential building at that property "since May 2019"; and (3) the additional 27 days between the Report and the January letter purporting to disclaim coverage as to Arevalos. D&G Mot. 23–26; Zuniga Mot. 6–7, 19–20.

The Court finds that Midvale's Disclaimer was not timely as a matter of law. Although reasonable investigations are permitted by Section 3420, Midvale's reasoning falls short at two junctures: (i) the unexplained two-month delay between learning of the Zuniga Action and completing the investigation and receiving the Report, and (ii) the additional month-long delay between receiving the Report and the Disclaimer. Even viewing the undisputed facts in the light most favorable to Midvale, this unjustified three-month delay would, as a matter of law, prevent a jury from finding that the Disclaimer was valid.

*First*, viewing the facts in a light most favorable to Midvale, it was informed of the Zuniga Action at the latest by letter from D&G on October 4, 2021. JSMF ¶ 31, *see also* D&G Notice at 2. Based on the complaint in the Zuniga Action, Midvale had access to the location of the alleged bodily injury. *See* JSMF ¶ 17; Ex. D, ECF No. 40-5. In fact, D&G expressly stated the location of the construction site in the Notice. D&G Notice at 2. Midvale was therefore on notice by this time that the Mult-Unit Exclusion may, and likely did, apply—and the clock began to run. *See United Specialty Ins. Co.*, 375 F. Supp. 3d at 398. Midvale offers no evidence as to what investigation it pursued during October and November of 2021 that a fact finder could rely on in order find that Midvale acted reasonably in delaying the Disclaimer.

For example, in *105 St. Assocs., LLC*, the court found a 34-day delay reasonable where the insurer explained, in part through an affidavit from its investigator, that "the claim was sufficiently complex and that consultation with outside counsel was necessary"

13

before disclaiming coverage. *105 St. Assocs., LLC v. Greenwich Ins. Co.*, 507 F. Supp. 2d 377, 383–84 (S.D.N.Y. 2007). Midvale provides no such explanation here. In the digital age, an investigation into whether that address housed a multi-unit building could be gleaned in short order, through public records or online map searches. A simple site visit my have also revealed the necessary information. Instead, Midvale took almost two months to send a reservation of rights, putting Arevalos on notice that it may disclaim coverage based on the Multi-Unit Exclusion in the future. This nearly two-month delay would be unreasonable as a matter of law—but the Disclaimer was still yet to come.

*Second*, Midvale received the Report from its investigator on December 9, 2021, but waited to disclaim coverage for nearly one more month. While an investigation may justify a delayed disclosure, an unexplained delay between receiving the report and disclaimer of coverage is itself unreasonable as a matter of law. For example, in *Bovis*, the court found that, "even measuring from the latest date on which [the insurer] learned of the grounds for a disclaimer" upon receipt of a report from its investigator, a 36-day delay was unreasonable. *Bovis Lend Lease LMB, Inc.*, 806 N.Y.S.2d at 88–89. In those circumstances, even an "unexpected resignation" by the insurer's claims agent was insufficient to justify the delay. *Id.* at 89. By contrast, the insurer in *105 St. Assocs., LLC* disclaimed coverage within ten days of receiving the investigator's report. 507 F. Supp. 2d at 384 (finding delay reasonable).

Here, Midvale waited nearly a month to issue the Disclaimer and file the instant action based on the information in the Report. Yet Midvale offers no evidence or explanation by which a fact finder could find that this second delay was reasonable. The only justification Midvale provides is to note that 30-day investigations *may* be reasonable as a matter of law. But Midvale does not even assert that it continued to

14

investigate the policy exclusion during the month of December. *Cf. United Specialty Ins. Co.*, 375 F. Supp. 3d at 398–99 (collecting cases and finding 29-day delay "to look into the employment relationship" not unreasonable as a matter of law). Instead, it asks this Court to find that whatever actions it took during the nearly one month between the Report and the Disclaimer—after the unexplained initial two-month period had already passed—were reasonable. The Court declines to do so in light of Midvale's burden to justify this delay.

Taken together, the undisputed facts reveal that Midvale delayed disclaiming coverage pursuant to the Multi-Unit Exclusion for roughly three months. Viewing those facts in the light most favorable to Midvale, no reasonable trier of fact could find that delay reasonable. That delay therefore runs afoul—as a matter of law—of Section 3420's requirement that insurers disclaim coverage pursuant to a policy exclusion "as soon as is reasonably possible after it first learns of the accident or of grounds for disclaimer of liability or denial of coverage." *U.S. Underwriters*, 369 F.3d at 107. Accordingly, Midvale cannot rely on its Disclaimer to vitiate its duty to defend the parties in the Zuniga Action.

Furthermore, the Court rejects Midvale's contention that "the real party at interest is D&G's insurer," which would render the Disclaimer as to D&G an inter-carrier tender outside the scope of Section 3420. Midvale Mot. 15. D&G argues that it is a real party in interest "regardless of whether D&G's insurer" is as well, given that D&G has filed a third-party complaint against Arevalos in the state court action. D&G Mot. 27–28. The Second Circuit has squarely addressed this issue in *Certain Underwriters at Lloyds, London v. Midvale Indem. Co.*, No. 23-cv-01183, 2024 WL 3517848, at *3 (2d Cir. July 24, 2024) (summary order) (affirming summary judgment by district court, Block, J.). There, the court explained that pursuant to New York law, disputes between insurers do not strip

15

the insureds of their own interests. *Id.* at *3–4. That is because insureds "have enforceable contract rights, regardless of who benefits from the enforcement of those rights." *Id.* at *4. Accordingly, the Court finds that D&G is a real party in interest with respect to this action and rejects Midvale's inter-carrier tender argument as to D&G.

### C. Policy Arguments

Midvale urges the Court to grant its motion on policy grounds as well. Specifically, Midvale argues that defendants' position would "incentivize[] [insurers] to disclaim coverage more frequently and with less investigation," Midvale D&G Opp'n at 14, such that it would "ultimately [be] harmful to the insured" by leading insurers to over-disclaim whether or not the "[p]olicy actually bars coverage." Midvale Zuniga Opp'n at 4. The Court finds this argument unpersuasive.

The purpose of the timeliness requirement in Section 3420 is to protect insureds, not insurers. Specifically, Section 3420's focus "is upon protecting the insured," including against delayed disclaimers that "may detrimentally delay the policyholder's own search for alternative coverage." D&G Reply at 12 (quoting *George Campbell Painting v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA,* 937 N.Y.S.2d 164, 173 (2012)). In *George Campbell,* the court explained that the New York Court of Appeals has rejected the argument that an insurer's investigation into "other possible sources of insurance for the policyholder" may justify an untimely disclaimer under Section 3420(d)(2). 937 N.Y.S.2d at 173. In other words, insurers cannot legally justify a delayed disclaimer by pointing to a search for alternative coverage. The appeals court reasoned that, rather than rely on the insurer's investigation, an insured timely notified of a coverage disclaimer "is best motivated by its own interest to explore alternative avenues of protection." *Id. See also First Fin. Ins. Co.,* 1 N.Y.3d at 69–70 (reasoning that a delay to "explore other sources of insurance for the

16

policyholder" is "an excuse unrelated to the insurer's own decision to disclaim" and therefore does not justify a delayed disclaimer). Indeed, "New York's enactment of the statute makes abundantly clear that it is the state's public policy to protect the insured, the injured person, and any other interested party who has a real stake in the outcome, from being prejudiced by a belated denial of coverage." *Jewish Cmty. Ctr. of Staten Island*, 957 F. Supp. 2d at 237.

Regardless, Section 3420 does not incentivize insurers to overly disclaim coverage—it simply asks them not to unreasonably delay in doing so. Where, as here, a court finds that an insurer has not provided any evidence allowing a jury to find that a delay of nearly three months was reasonable, the policy concerns Midvale raises are not implicated and therefore provide no grounds for reconsidering its duty to defend.

II. Midvale's Duty to Indemnify

With respect to the duty to indemnify, the parties do not raise any arguments separate from those regarding the duty to defend. However, these duties are distinct: "The duty to defend is measured against the allegations of pleadings but the duty to pay is determined by the actual basis for the insured's liability to a third person." *Euchner-USA, Inc. v. Hartford Cas. Ins. Co.*, 754 F.3d 136, 140 (2d Cir. 2014) (citing *Servidone Constr. Corp. v. Sec. Ins. Co. of Hartford*, 64 N.Y.2d 419, 424 (1985)). Whether Midvale has a duty to indemnify any parties in the Zuniga Action depends on whether Midvale will be "required to pay once the litigation has run its course." *Euchner-USA, Inc.*, 754 F.3d at 140; *see also Admiral Ins. Co. v. Niagara Transformer Corp.*, 57 F.4th 85, 89 (2d Cir. 2023) (explaining that duty to indemnify "is triggered by a determination of the insured's liability to the third party"). It is possible, for example, that Midvale has a duty

17

to defend but not indemnify the parties in the Zuniga Action. *Euchner-USA, Inc.*, 754 F.3d at 140.

That question is therefore not currently before the Court as the parties have not presented any information as to liability determinations in the Zuniga Action. *See Euchner-USA*, 754 F.3d at 139 (declining to "reach the issue of indemnity" after finding insurance company "owed a duty to defend"); *Berkley Ins. Co. v. Prime Ins. Co.*, No. 20-cv-02249, 2023 WL 4595513, at *4 n.1 (E.D.N.Y. July 18, 2023) (noting that duty to indemnify analysis "would be premature" until liability in the underlying action is resolved). Accordingly, the Midvale Motion and Cross Motions are each denied insofar as they seek declarations regarding Midvale's duty to indemnify the parties in the Zuniga Action.

### III. Inconsistent Judgments

In light of the Court's finding that Midvale did not timely disclaim coverage and therefore has a duty to defend in the Zuniga Action, the Court finds it prudent to address the judgment entered in this action against defendants Arevalos and RM. Where a prior default judgment "creates an incongruity with a judgment on the merits," the default judgment cannot stand. *Henry v. Oluwole*, 108 F.4th 45, 54 (2d Cir. 2024). This is because the Supreme Court's "longstanding principle" articulated in *Frow* "prohibits a default judgment that is inconsistent with a judgment on the merits." *Id.* at 53–54 (citing *Frow v. De La Vega*, 82 U.S. 552 (1872)). Where that is the case, the Court must vacate the "incongruous" default judgment pursuant to Federal Rule of Civil Procedure 60(b)(6). *Id.* at 54 n.4.

After defendants Arevalos and RM failed to answer Midvale's complaint in this action, ECF No. 22, Midvale moved for default judgment as to those defendants,

ECF No. 23 (the "Motion for Default Judgment"). In July 2023, the Court adopted the report and recommendation of the magistrate judge and granted the Motion for Default Judgment. ECF No. 35 (the "M&O"). The Court's decision in favor of Midvale was based on the express terms of the Multi-Unit Exclusion, which plainly bars coverage of the Zuniga Action. M&O at 6–7. The issue regarding the timeliness of Midvale's disclaimer of coverage pursuant to Section 3420 as raised by defendants D&G and Zuniga was not before the Court on the Motion for Default Judgment, and the Court did not analyze that issue. *See* M&O at 7 (finding that "D&G and Zuniga did not have standing to challenge this determination on a motion for default against separate parties and may still litigate the issue later on."). The Court's ruling today—finding Midvale's disclaimer of coverage untimely pursuant to Section 3420—therefore does not conflict with its earlier reasoning in the M&O regarding the substantive terms of the Arevalos Policy.

As to the ultimate conclusion of that opinion, however, a conflict presents itself. In accordance with the M&O, judgment was entered "declaring that Midvale has no duty to defend or indemnify *any party*" in the Zuniga Action, ECF No. 36 (the "Default Judgment") (emphasis added), as that was the specific relief requested by Midvale, *see* M&O at 7–8. The terms of the Default Judgment could be interpreted as applying to all parties in the Zuniga action, including defendants D&G and Zuniga. Although the Court found that the Default Judgment was only *binding* as to the non-appearing defendants Arevalos and RM, M&O at 8, the Court finds incongruity between the express terms of the Default Judgment and its conclusion on the present motions for summary judgment. Accordingly, to the extent the Default Judgment conflicts with this Order, it is vacated pursuant to Rule 60(b) in order to avoid inconsistent judgments of this Court.

IV.  Attorneys' Fees

Finally, D&G seeks attorneys' fees, costs, and other defense expenses, plus interest. D&G Mot. 32–36. After certification from the Second Circuit, the New York Court of Appeals made clear that "an insured who prevails in an action brought by an insurance company seeking a declaratory judgment that it has no duty to defend or indemnify the insured may recover attorneys' fees regardless of whether the insurer provided a defense to the insured." *U.S. Underwriters Ins. Co. v. City Club Hotel, LLC*, 3 N.Y.3d 592, 598 (2004). As that is the precise circumstance before the Court, D&G may recover fees from Midvale arising out of its defense in this action.

## CONCLUSION

For the reasons stated above, the Midvale Motion is **DENIED**; the defendants' Cross Motions are **GRANTED** in part, **DENIED** in part; and the Default Judgment previously entered at ECF No. 36 is **VACATED** insofar as it conflicts with this Order. Accordingly, the Court **DECLARES** that Midvale has a duty to defend Arevalos and D&G with respect to the action captioned *Victor Siguenza Zuniga v. 625 Halsey LLC, et al.*, in the Supreme Court of the State of New York, County of Kings (Index No. 525911/2018). D&G may propose a briefing schedule for its motion for fees and costs related to its defense in this action within thirty (30) days of this Order.

**SO ORDERED.**

                                            */s/ Natasha C. Merle*
                                            NATASHA C. MERLE
                                            United States District Judge

Dated:       November 1, 2024
              Brooklyn, New York